Good morning, ladies and gentlemen. This is the time scheduled for rehearing en banc in the case of Almanza-Arenas v. Lynch. We are joined by video by Judge Gould. Judge Gould, welcome. Yes, thank you. Good. And you can hear us and we can hear you, so that's... Great. I can hear you fine. May we proceed with the argument? Good morning, and may it please the Court, Counsel. This immigration case involves two questions, and the answer to either one of them suffices to grant the petitions for review. We would submit the Court only needs to focus on the first one, which is whether Mr. Almanza's conviction is under a divisible statute. It's not, and that follows from Des Campes, as correctly understood by the Fourth Circuit, by the BIA itself, in Chirez-Castrejon, and by several panels of this Court, not just Rendon, but also Coronado, Padilla-Martinez, United States v. Willis, and just last month Lopez-Valencia. It seems like the statute is clearly divisible, at least potentially, because it has, you know, alternative phrases. And Des Campes says what we do is we try to see if there are different phrases that can be separated out. And here it could be done. It's just that when you go to look at the charging document, it hasn't been done, right? Judge Watford, at the very beginning of the Des Campes opinion, the Court makes clear what a divisible statute is, and it's not just one that is drafted in the alternative using the word or. It's, quote, that kind of statute sets out one or more elements of the offense in the alternative. And element has a specific. Breyer, the element here is the mens rea with which you commit the offense, and you can either commit it with an intent to permanently deprive the owner of the property or you can commit it with the intent to temporarily deprive. So it's just there are different ways you could satisfy that element, but the element is still just the mens rea. Judge Watford, I completely agree that there are different ways to commit this single crime, but it is undisputed that we do not have a situation where you have multiple crimes with alternative elements. What you have is a single crime that can be committed in different ways. Mr. Fleming, would you agree that it is possible to be convicted of a crime involving moral turpitude under this statute? It is possible to have engaged in conduct that would constitute, that would be morally turpitudinous, namely, cause theft and be convicted under the statute. But there are some violations of CBC Section 10851 that are crimes involving moral turpitude. There is some conduct that can result in a conviction, Judge Tolman, under this provision that is turpitudinous. That is different from saying there's a conviction. Well, it's still a conviction, isn't it? Well, conviction is used under the Taylor-Shepard doctrine in a very specific way. Well, let me put it to you this way. When the jury comes back with a verdict of guilty, may I conclude that the defendant has been convicted of 10851? Convicted under that provision, yes, most certainly. And Mr. Almonzo ---- And it could be a crime involving moral turpitude if there was a permanent intent to deprive the owner of the vehicle of his property. But in order to determine that ---- A question, counsel, yes or no. Well, I'm trying to answer the question. Certainly, Mr. Almonzo was convicted under 10851A. No dispute about that. The question whether he has been convicted of a crime involving moral turpitude implicates the Taylor-Shepard doctrine. So if we can't tell ---- And that cannot be determined. If we can't tell from the face of the statute, as Judge Watford was just teasing out with you, then don't we have to apply the modified categorical approach to try and answer the question? Dekamp says you can only go to the modified categorical approach if the disjunctive phrasing of the statute, in fact, refers to disjunctive elements setting out separate crimes. If it is ---- And what's the difference between a crime involving moral turpitude under 10851 and a 10851 conviction that does not involve a crime involving moral turpitude? If someone is convicted because they took a car with the intent to deprive the owner temporarily of possession or title, as was the case, for instance, in People v. Howe cited in the Federal Defender's Brief where someone took a car and returned it the very next day undamaged, that can result in a conviction under 10851A, but it is not turpitudinous. So why is that not a divisible statute? Because the jury in California does not need to decide beyond a reasonable doubt whether there was intent to deprive the owner of a vehicle for more than a short period, a temporary period of time. Well, let's say in a hypothetical case, right, the charging document only charged an intent to permanently deprive the owner of the property, right? The defendant went to trial. The jury was only instructed, in order to convict, you must find that he intended to permanently deprive the owner of property. It seems to me in that scenario, we do know that the jury, if the jury returns a verdict of guilty, we do know that the jury necessarily convicted the defendant of a crime involving moral turpitude. And why wouldn't we allow that to qualify? I think that is the same question as would have been, as was addressed in Dekamp under the California burglary statute there. You could hypothetically have formulated a situation where Mr. Dekamp had been charged with breaking and entering instead of just potentially either breaking or entering or entering by fraud or deception to shoplift. And you could have had a situation where he would have been convicted so that the jury instructions would reveal that. Dekamp nonetheless holds that what he might have admitted, what a jury might have found in terms of extraneous facts, do not bear on the analysis. There was no statutory hook in the statute at issue in Dekamp. And it seemed like the Supreme Court, the majority, was very concerned that there wasn't statutory language set out in the alternative. But in this, in 10-851, there is statutory language set out in the alternative. So the statute alone doesn't give us the guidance. We have to look at something else. And so the question I have is what else do we look at? The footnote 2 says we look at the Shepard documents, footnote 2 in Dekamp. But what Judge Wofford is suggesting is if we look at the Shepard documents, couldn't we say in one case that the conviction was from a divisible statute and in another case that it wasn't because the charging documents were written differently? How do we deal with that? There's a lot in that question, Judge Acuta, and I want to make sure I address it all. I'll start just by stating our position as to footnote 2, which is that it makes eminently clear, as does the rest of the opinion, that no matter what it is you're looking at, and I will address what I think the Court should look at, but no matter what you're looking at, the search is for elements in the Richardson v. United It's not alternative ways of committing a single offense. So in the search for elements, which – and that's contrary to the government's position. The government thinks you can ignore elements altogether. We think that's not a plausible reading by any means of the Dekamp opinion. When you're looking for elements, what should the Court look at? Obviously, the Court looks to the text of the statute. That's not disputed. And there may be situations where that is enough to show that there are multiple elements that need to be found by the jury beyond reasonable doubt, and where the other, then you could go to the modified categorical approach. You can also look to State law. The Court certainly does not foreclose that. In fact, it leaves that possibility open, and there are many situations where the Supreme Court and this Court have looked to State law to figure out what the elements of a crime are. You can additionally – I beg your pardon. Let me ask you about the State law question, because footnote 2 says the Court merely looks at the charging documents and, you know, the dissent from denial in the Rendon case says, well, merely should be read to mean only. The Court only looks at the Sheppard documents. How do we know that the Supreme Court held open the Court's ability to look at State opinions? Footnote 5, Judge Ikuta expressly does that. It says we may reserve the question, and it talks about California cases and pattern jury instructions in that context. In other cases applying the categorical approach, the Supreme Court has looked at State law in order to determine the elements of a crime to see if they sweep more broadly than the generic offense. An example of that is James v. United States, which involved the Florida attempted burglary statute, which was very broadly drawn and on its face looked like it swept more broadly than the generic offense. But the Supreme Court said the Florida Supreme Court had narrowed its application, therefore it was a categorical match. This Court has done the same thing. But what does merely mean in footnote 2? I think merely is responding to Justice Alito's concern in dissent that this was going to be a difficult thing to do. And the majority says, no, it won't be difficult. You can look at the Sheppard documents because they will identify the elements. Now, I think that is true in Federal practice. As the Federal Defender's amicus brief explains in detail, it may well be true in many State jurisdictions. It's not true in California, where there are different charging practices, many crimes are charged conjunctively, and the practice may, in fact, vary from county to county. However, I think if you are talking about a jurisdiction where the Sheppard documents will clearly lay out the elements of the crime, they have to be separately charged, they have to be separately found by the jury, then I think there we would be all right with doing what Judge Kaczynski said. I apologize. So if the charging documents here said temporarily to intent, the jury has to find intent, or the jury instructions say intent to temporarily deprive or intent to permanently deprive, could we say that here, following the direction DECAMP, the crime is divisible, but in another case, if the charging document said, as they do here, temporarily or permanently to deprive, we would say it was indivisible? How does that work out? This is one of the concerns with that approach, which Judge Kaczynski in his decision his opinion dissenting from denial in Rendon freely recognizes. The categorical approach should be categorical. A conviction should produce the same result in all cases, which is why it's important if the Court is looking at Sheppard documents to be mindful of the task here. The task is not to find out what the individual did. The task is to find out whether this statute, in fact, has multiple crimes that have different elements. There will be some situations where the Sheppard documents might illuminate  There will be many situations, such as the ones this Court encountered in Coronado and Padilla-Martinez, where the — where State law is clear from other sources, whether it's the Witkin Treatise or State decisional law or a pattern jury instruction that says the jury has to write down, filling in the blank, what the drug is, which makes clear that the nature of the drug is an element of the offense. And so there's no need to go to the Sheppard documents. And that's why the Sheppard documents. a misdemeanor or a felony under your theory? Well, the — quite honestly, that's not — I'm not a criminal practitioner in California, so I don't know how it plays out in practice. But generally speaking, because this is an offense that can be — can be convicted based only on the temporary taking, I think a sentence of 300 — of one year or less does wind up being a misdemeanor. But you could be sentenced to less than a year in prison on a felony in California. I mean, you could theoretically give the defendant probation. So that doesn't answer my question. That may be right, Judge Tallman. And I must confess, this isn't something that I've focused on because it's not an argument that the government has made. And it doesn't — it isn't raised in this case because this clearly is a misdemeanor conviction. I'm trying to figure out how we're going to write an opinion that addresses what it is that courts and immigration judges and practitioners can look to in order to decide what is permissible in light of discounts. Certainly, Your Honor. I'm — I'm grasping at straws here, trying to figure out what the distinguishing elements or factors are. That question I can't answer, Judge Tallman. The court, whether it's a sentencing court or an immigration court, looks to — when there are alternative crimes that's defined by multiple elements. Sometimes that's clear from the text of the statute, if there are subsections, for instance. Sometimes State law will be helpful, whether it's decisional law, pattern jury instructions. Sometimes the Shepard documents might be useful, as Judge Kaczynski suggested. And with those, that is what the court can look at to decide whether the offense is divisible. If it is divisible, then you can go to the modified categorical approach and try to determine which version of the crime, not which method or means or way, but which actual of the — crime of the multiple options he was necessarily convicted of. But if — Let me ask you — let me ask you then in Moncrief, right, the statute there, if you recall, listed about 10 different — according to you, 10 different ways you could commit the offense, the last of which was, I think, possession with intent to distribute marijuana, right? I believe that's right. The court then referred to the plea agreement, which — in which it was very clear that the defendant had pleaded guilty to the version of the offense involving possession with intent to distribute marijuana. But that statute was drafted the same way this one is. It just had a bunch of clauses set off by an or, and the court there seemed to have no trouble saying, no, the version of the offense this guy committed was the last one, possession with intent to distribute marijuana, and so they proceeded to do the analysis from there. Same thing in Malooly, the case from just last term, if I'm pronouncing that right. Again, it was just — the question was whether all of those different drugs that were listed in the — in the State statute, right, it was an overbroad list, and the question was whether you could go to the charging documents and figure out which drug was the one that he actually admitted to. And you couldn't. So therefore, the petitioner won. It seems to me — don't get me wrong, my questions are — I mean, I still think that the petition here should be granted, but I think probably for a different reason than you do, I think what happens is when you go to look at the charging documents here, you can't figure out which version of the crime he was committed — convicted of, and therefore, the conviction is overbroad. I would certainly agree, Judge Watford, there are lots of different ways we can win, and I do not want to suggest that this is the only one. What I would say, however, is that the — even if you were to go to the conviction documents in this case, the tenor of the question is exactly right. The Shepard documents in this case do not suggest that he was charged with, pled to, or convicted of the turpitudinous offense. We don't think you can go there under DeCamp because DeCamp focuses the analysis on elements, and it is undisputed that this statute, 10851A of the Vehicle Code, does not have multiple crimes with multiple elements. The government has not disputed that at all, and rightly so, because California law has been very clear since People v. Jaramillo that you can be convicted under this statute regardless of whether you have — your intent is only to deprive temporarily or permanently. But if you're on — I'm sorry, Judge Breyer. What do we — what do we understand from the model jury instructions in California? Does that tell us anything about this statute? Does the California courts approve those model jury instructions? I'm referring specifically to the phrase, intended to deprive the owner of possession or ownership of the vehicle for any period of time. Yes. That's — that's the newer one. The Cal CRIM 1820 says that specifically. And, you know, the pattern jury instruction is generally a reliable indicator of State law. The old one, which was in effect when Mr. Almanza pled, Cal JIC 14.36 says, had the specific intent to deprive the owner either permanently or temporarily. And the point is that the case law in California, which is laid out in great detail in the Federal Defender Brief, but including People v. Jaramillo, makes clear that it is not an — the jury does not need to agree on whether the intent to deprive was temporary or permanent. Therefore, it is not an element. And, again, I'd say it's not disputed in this case. Counsel, could you shift to the burden of proof question? Because if — Oh, certainly, Judge Breyer. If, based on your concession, that there might be crimes involving moral turpitude lurking under a 10-851 conviction, and he has the burden of proof to establish eligibility for cancellation of removal, what's wrong with the agency's determination that he simply failed to establish a prima facie case of entitlement to relieve? What's wrong here, Judge Tallman, is the BIA was erred in what they thought Mr. Almanza had a burden to show. The BIA thought he needed to prove that he was convicted of joyriding. The IJ says the same thing. Or not convicted of a crime involving moral turpitude. Is that the same thing? It is not the same thing, Your Honor. Proving affirmatively that you are — were convicted of joyriding is different, and Moncrief explains why. Because Moncrief explains that the word convicted in a provision like this means the facts that you necessarily were found to have committed. So it is — But he can't — what's good for the goose is good for the gander. He can't meet his burden of proof either for the same reason that the government can't prove affirmatively that it was for a crime involving moral turpitude. Isn't that the conundrum? It is not a conundrum, Judge Tallman, and that's because, again, the Board got the question wrong. The question is, was he necessarily convicted of auto theft? And if the record is ambiguous on that front, then he cannot have been necessarily — he shows as a matter of law that he was not necessarily convicted of auto theft. And notably, the Board, in the decision of matter of E.H. from a couple of months ago, which we attach to our in-bank brief, agrees with this reasoning. It's an unpublished decision, but it recognizes that after Moncrief, the question is not the one that the Board conceived of in Mr. Almanza's case, which was, did you prove you were convicted of joyride? I'm sorry, I didn't mean to interrupt. For your — to follow your reasoning, do we have to agree that this statute is indivisible? This is an alternative ground. So if the statute — if we said the statute was indivisible, and I'm just — this is a hypothetical, that then it wouldn't be a crime — it wouldn't be a CIMT. So, therefore, even though we would have the burden, he would have the burden, as a matter of law, 10851 would not be a CIMT. So he wouldn't have to do anything, right? That is correct, Your Honor. But if it were divisible, then why wouldn't he have the burden to show that he was convicted under the, you know, the one — the one that — the joyriding? He would — he would have the burden to show that he was not convicted of a crime involving moral territory. Of CIMT. And what that means under Moncrief is he has to prove that he was not necessarily convicted of theft. He does not need to prove affirmatively he was convicted of joyriding. This makes a difference, because if a record is ambiguous, the noncitizen proves, as a matter of law, that he was not necessarily convicted of a crime involving moral turpitude. This is — However, if the statute were divisible, which is the hypothetical — Yes, Your Honor. Then it may be more difficult for him to meet his burden. If it's — if it is not divisible, then at that point all he's got to show is that he could have been convicted of something which is — the statute is broader than what he could have been convicted. But if, in fact, it's divisible, then at that point he could go to the modified categorical approach and then take the documents and determine what it was that he was convicted of. Correct? Judge Smith, I do want to be clear that the discussion of the burden of proof only comes up if the Court disagrees with me that this is an indivisible statute. That's what I was trying to get at. Yes, and I apologize for not being — I was trying to get at it. I apologize for not being more direct earlier. If you agree with us that the statute is indivisible, you do not need to think about the burden of proof at all, and we would encourage the Court to take that view because we think that is the correct view. Even if the statute is divisible, I thought your response was that the burden of proof doesn't matter here, because the determination the Court has called upon to make is a purely legal one. It has nothing to do with any factual disputes, right? That's true. There are two ways to think about it, Judge Wanford. That is one of them, that this is a legal question. So no matter where the burden lies, the burden may matter a lot for other things that he has to show, like good moral character, continuous physical presence for 10 years, extreme hardship to U.S. citizen family members. We think he can do all that. The burden matters a lot there. But for this legal question, it doesn't matter. Another way to look at it, and this is the reasoning of the panel decisions in Sandoval Lua and Rosas Castaneda, is that the burden, though it applies, is satisfied as a matter of law because of the nature of the question on which he bears the burden of proof, which has to do with what he was necessarily found to have been convicted of. We overruled that, Sandoval Lua, in Young. You did, Judge Kagan. That's right. And I know that the theory is that Moncrief overruled Young or superseded Young. My question is, I didn't see in Moncrief that it was doing a modified categorical approach. It appeared to be saying that the crime of conviction was not categorically qualifying as, I guess, a drug offense under the Federal law. So how — so explain to me how the categorical analysis in Moncrief could overrule our modified categorical analysis in Young. Certainly, Your Honor. DECAMP, two months later, makes very clear that the Taylor-Shepard inquiry, the categorical approach discussed in Moncrief. Moncrief does talk about the modified categorical approach. Your Honor is right. It doesn't actually apply. It didn't need to. But DECAMP later says that the modified categorical approach preserves the categorical approach's basic method. And so the question that is being asked under the modified categorical approach is exactly the same question as under the categorical approach. Namely, what was he necessarily convicted of? So counsel, if — Thank you. Go ahead. I'm sorry. No, go ahead. If we disagree with you regarding whether Moncrief overruled our precedent, do you lose? I don't think we lose because the Court is sitting in bank. And so Moncrief does not need to expressly or clearly overrule Young in order for the Court to reach what we think is the right answer under Moncrief's reasoning. So would you ask us to overrule Young? We do ask that, Your Honor. And recognize that Young was incorrect because in light of the recent — the intervening development in Young — sorry, in Moncrief, that shows that the board in this case and the lead and bank opinion in Young respectfully asked the wrong question. They asked, was the — did the immigrant show that he had been convicted of the non-generic offense? Moncrief shows that's not the right question. The right question is, did he show that he was not necessarily convicted of the predicate offense? And I'll point out that Young, the opinion early in the opinion on page 983, actually does articulate the question correctly. It does say whether a guilty plea necessarily admitted elements of the generic offense. And we think that's the right formulation. Regrettably, when it then — I'm sorry, Justice Kagan. What's wrong with putting — since it's his burden, he's the one who's seeking relief here. What's wrong with putting the burden on him to show that he does not have a disabling CIMT conviction that renders him statutorily ineligible for the relief he is seeking? We're not trying to fight the — necessarily the idea that he has a burden. The point is that the burden is satisfied when he shows that the record does not necessarily demonstrate a disqualifying conviction. Under no — so you would really ask us to rule as a matter of law that under no circumstances could a 10851 conviction be a crime involving moral turpitude because the State will never be able to show, given the way the statute's written, that he was running a chop shop ring at the time he was convicted. Well, we certainly ask that under the first point because this is not a divisible statute. But even if the Court were to rule that it is — that it is divisible, we think that the — that going to the modified categorical approach, the question has to be, does the record before the immigration court show that he was necessarily convicted of the turpitudinous offense? Now, I again want to be clear. We don't think there are divisible offenses. We don't think there's one that's turpitudinous and one that isn't. I'm sorry, Judge Akuta. One more question about the relationship between Moncrief and Young. Again, I'm — I'm a little confused because in Moncrief and Dekamp, in both cases, the Court didn't apply the modified categorical and treated them as one statute of conviction and compared them to the Federal generic offense. Whereas in Young, the question was, which statute was he convicted of? And that's where we said the alien had to bear the burden of proof. I don't understand how Moncrief or Dekamp applied to the — the which — which statute was he convicted of question. Can you explain that? I can do my best, Judge Akuta. The — what we rely on Moncrief for and the way the Board used it in matter of EH, the decision we attached to our brief, is it said that the question has been shifted from what Young and what the BIA in Almanza thought it was. It wasn't that you have to show affirmatively, I was convicted of the non-turpitudinous offense. That goes further than the — what the alien actually needs to prove. The question is simply, was the non-citizen necessarily convicted of a crime involving moral turpitude? And the answer will be the same because it is the same question in both the relief and the removal context, which is why Moncrief was able to say, citing Karachuri, that the analysis is the same in both contexts. Again, we do not think the Court needs to reach this, but if the Court does, we would respectfully submit the right answer is to recognize that Moncrief has undermined the reasoning of Young and that the — and has affirmed the reasoning of Sandoval-Lua and Rosas-Castaneda on this issue. With the Court's permission, I reserve the balance of my time. Certainly. We'll hear from the government. May it please the Court — sorry. May it please the Court, Your Honor, Leon Fresco on behalf of the government. The questions that have been asked are all the questions that I want to answer. So here we are in a two-part analysis in this case, Your Honor. Part 1 is, was Mr. Almanza convicted of a divisible statute? And we don't get to Part 2, which is, what is Mr. Almanza's burden of proof, if we don't decide in Part 1, was he convicted of a divisible statute? The first person who weighed in on this question of whether Mr. Almanza was convicted of a divisible statute was Mr. Almanza in his first brief on page 10, if you look at it. And it said in that brief, Petitioner's State crime is broad in nature, thereby requiring the use of the modified categorical analysis. That was the law at the time Mr. Almanza's first brief was filed. That was the law at the time Shepard was decided, all the way through until now. The only question is whether the panel decision in Rendon changed that in any way. The decision in Descamps did not change that in any way. The only question is, what is the impact of the Rendon decision, and was Rendon correct, that you have to parse State law, which is what the Supreme Court said you shouldn't have to do, in order to determine whether someone was convicted of something under State law that was an element of the offense? And I will start both with Rendon. However, I'm having a tough time. It doesn't seem to me I even have to get to Rendon. If I apply to Camp or Deschamps, which I say, I don't know what it is. My wife is French, so either way. I'm from Idaho, so my pronunciation is way out of it. But if I apply that, it seems to me that what I do is I just look at the statute and I try to apply the statute to the elements. And to be fair, I'm having a tough time understanding if all the defendant is charged with and all the State has to prove is the defendant took and drove someone else's vehicle without the owner's consent. And when the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time, that that could anyway be anything except what Deschamps says is not divisible, and therefore this is over because it's categorically overbroad. So two answers to that question, Judge Smith. The first one is that is the pattern jury instruction. That pattern does not fit every case under 10-851. Just a minute. The pattern jury instruction, I only read that because it was my simple Idaho way to, if you will, to the best of my ability, summarize what I found in the case law as well. So I'm not trying to suggest that there's anything different than for any period of time in any case law that I have. I will provide one case that proves the exception to that, Your Honor. Well, one case. Well, no, but this is unimportant, but it sets a principle, which is People v. Llamas, which was cited in the Almanza case, which talks about communal property, community property, but that could be any property interest. People co-sign leases on cars all the time. People use joint credit to buy cars all the time. People put two names on titles. In any of those offenses where someone then just drives away with a car, never to be seen again, or uses the chop shop example, the only way you are going to be able to get a conviction is to prove a permanent taking. And under this analysis, we don't know, because there are two people. Well, if you don't know and the elements are there and you can't get to it, then it seems to me at that point that it's overbroad and there's no way, reason to go on. Well, no, Your Honor. What we look at is, is the statute phrased in the disjunctive permanent or temporary, and then we look at the record of conviction to figure out what happened in this case. Was it a permanent or a temporary taking? If Mr. Almanza had proceeded to trial and the current model jury instruction had been given, would the government be here? It would depend, Your Honor, because that may have been incorrectly given because there were two criminals in this case. Mr. Almanza, there was Gabriel. And let's just worry about Mr. Almanza. I don't want to worry about anybody else. Okay. We'll create the hypothetical to make it easy on ourselves. Okay. Well, what I'm saying is if the jury instruction was properly given because there was no ---- That's the model jury instruction. Well, but we don't know to what fact pattern this case was applying to, Your Honor. That's the problem. I thought after the scams we weren't really supposed to take into account the fact pattern. But here's the problem. What I'm saying and what People v. Lama says is that there are cases under 10-851 where it is inappropriate to give a jury instruction that allows a temporary taking to be in the instruction. If you do that, you are committing reversible error. And so if Mr. Almanza had one of those cases where you can't use the temporary jury instruction, then we would know that if it was a permanent taking, that would help us to know. But remember, this isn't coming up where the government has the burden approved. This is coming up in the case where Mr. Almanza has the burden. So you're telling us that we would have to know whether Mr. Almanza was accused of taking something that might have arguably been community property. Or that he had some ownership interest with somebody else. And we would have to figure that out and hope to figure it out from the Shepard documents? Well, it would be in the Shepard documents. This could be something that could have been in the plea transcript, Your Honor, where this would have been laid out. The entirety of that case would have been laid out. There was this statute. There was this charge. Mr. Almanza disputes it because he says he has an interest with Ms. Jimenez. But the issue is he was convicted of a permanent taking. But we don't know any of this because the plea transcript was not introduced in this case, Your Honor. The problem with 10851 is that it's one of those that's a pretty easy statute for a prosecutor. And they wrote it that way so that you don't have to get into it. Because as opposed to with the intent to steal, that's a hard thing to prove. But if you catch someone in a car and they didn't have the owner's permission, you don't have in this statute, you don't have to prove that they intended to steal it. They're in it. They have a, you know, it's temporary or permanent. You don't have, it's an easy, and so maybe it's not a CIMT. Well, the good news, Your Honor, for the aliens in 99 percent of the cases is they're going to win. And they won't be removed because the conviction document will say permanent or temporary. The plea agreement will say permanent or temporary. The transcript will say permanent or temporary. And they'll win. And so you're right. And so those people won't get removed. But it is a different question when we're talking about eligibility for cancellation of removal, an extraordinary benefit that only goes to 4,000 people a year. And we're talking about a population of about 40. But I don't think prosecutors charge it. You know, say if it's someone, you know, the auto thief. Yes. I don't think they charge it permanent. They like it that it's temporary or permanent because it's easier to prove. And what I'm saying, Your Honor, is just because they charge it that way doesn't make it an indivisible statute. The statute is divisible under every way the Supreme Court has mentioned divisibility, which is that it's phrased in the disjunctive and can be charged in that manner. And you have to charge a permanent taking in a case where a defense is that the individual had some sort of property interest in the car that allowed that person to share. I mean, everything you're saying about what prosecutors have to do or must do under state law seems to me totally irrelevant in this case because the actual charging document charges either or. Yes, Your Honor. And just hang on a second. So and we have a West plea here where we know the defendant was not going to admit to any facts. He was just pleading guilty to count one or whatever it was as charged. Well, Your Honor, there are three decisions where this court says that a West plea doesn't end the analysis, that we have to look at the plea transcript. That's United States v. Valdovinos-Torres. What would the plea transcript here reveal when the defendant is by definition not admitting to anything other than I'm just I'm pleading guilty to the offense as charged? Well, so let me answer two questions. One, the plea transcript could well, I'll answer your question two ways, sorry. The plea transcript could show what I have talked about, which is that there was a property interest in the car and there was a permanent taking. But more importantly, the plea transcript is not relevant to the answer of whether this is a divisible statute. That's relevant to the question of whether who wins in the when the modified categorical approach is. Okay. I'm assuming that the statute is divisible because it's framed. But that's important because then. Hang on a second. Because it's phrased in the disjunctive, right? So I think I'm with you at that step, not with the petitioner. Yes, Your Honor. But then what the modified categorical approach tells us to do is to look to the Shepard documents to figure out which version of the offense the defendant or the petitioner was convicted of, right? Correct, Your Honor. And here the defendant, I'm sorry, the petitioner was convicted of the overbroad version of the offense because it was charged as either permanent or temporary. Your Honor, if everything Your Honor is saying is correct, which I don't dispute any of it. The point is that takes us to step two of this case, which is who has the burden in a cancellation of removal case to establish that they were. I agree. I agree. But that means that the Rendon opinion needs to be overruled. I agree. But hang on. But I disagree with you on the burden issue. So tell me why I'm wrong. Okay. So because I would say that once you get, once we've figured out which version of this crime the petitioner was convicted of, Descamps tells us we're just doing an elements to elements comparison, right? Right. Between the version of the offense that he was convicted of and whatever this generic Federal offense is, right? Right. And that is a straight legal determination that has nothing to do with the burden of proof. And when we do that legal determination, it seems to me that here the government loses. I think, Your Honor, two things. There's the statutory burden, number one, and there is sort of a systemic view that we have to look at. So let's talk first about the statutory burden. The statute itself says the alien has the burden of proof to have relief from removal. Right. So the alien has to show, it's a young decision, but it's also a decision of five other circuits now, that they were not convicted of a crime involving moral turpitude. Yep. Now, here is what happens. This isn't always going to come up this easily. San Diego, the guy's there, there's a conviction, go get it. A lot of these convictions are in foreign countries. They're in other places. And we don't have these records. And what Congress is saying is if we're going to use one of these 4,000 slots on somebody, let's be sure they deserve it. Let's not make them one of these people who's actually a morally turpitudinous criminal, Your Honor. And so that's why the burden is being placed on the alien to show us. But explain why, if we're all in agreement up to the point where we're now doing the elements-to-elements comparison, right, because you say that that's what we're supposed to do. Yes, Your Honor. And I say that all we know from the Shepard documents is that he's been convicted of the overbroad version of the offense. Yes, Your Honor. And so when we compare the elements of that offense to the Federal generic offense, it's not a categorical match. Well. So what Descamps tells us is that in that situation, we have to assume that the only thing the defendant necessarily admitted to was the least of the acts charged. Well, there I think we — there's a step that's being skipped, because why Descamps ends there is because the statute says enters. It doesn't say enters illegally or legally. So Descamps ends because that's not divisible there between enters legally and enters illegally. So nothing you're going to show in those documents is going to be relevant to that because it just says enters. Here, this statute says theft permanently or theft temporarily. And it is true that this may end up in equipoise. And when it ends up in equipoise, the alien wins if we're trying to deport them, but they lose if they're trying to get one of these 4,000 rare slots. But there's nothing to be in equipoise on. That's what I guess I'm not seeing. There is. It's a legal determination whether the offense that he pleaded guilty to is a categorical match to the Federal generic offense. What does that have to do with the burden of proof? Well, Your Honor, there are two burdens of proof. One, there's the burden of coming forward with all of the documents to allow us to make that decision. That's one thing, first of all, that wasn't done in this case. And that's one of the reasons that his cancellation for removal was denied, because we say, because the Board of Immigration Appeals said, sorry, that you can't withhold documents that might show that you convicted of one of these disjunctive parts. So that's first, and that's critical. Sotomayor, do you disagree with Judge Watford's statement that the charging documents, the Shepard documents show he was convicted of 10-851, both prongs, the overbroad. I think what Judge Watford was saying was the overbroad version of the crime. I mean, as I understand what Judge Watford is asking you is, even if the statute isn't indivisible as some generic matter, when we look at the Shepard document, we read it as if it were indivisible in Mr. Almanza's case. Do you disagree with that? I disagree with that. And I may have not been understanding the question, and I apologize, Judge Watford. What I'm saying, the simplest ways to answer this on a fact-based matter is to say that the documents that Mr. Almanza or that I submitted in this case, Mr. Almanza didn't submit the documents, do not distinguish whether the conviction in this case was under a temporary or permanent. But that doesn't make it a unique case. But let's talk about, counsel, I'm sorry, were you finished? Yes, Your Honor. Let's talk about the practical implication of your interpretation. Because I think what they can't teach us is to really focus on an elements-based approach to try to figure out whether this is one crime of basically taking somebody's vehicle without their permission, right, or whether it's included within that crime the element that you either permanently deprive the owner of the use of that car or temporarily deprive the owner of the use. But the bulk of California law, the jury instructions, the way these things are charged, we know that the prosecutor never has to prove the duration of the depuration of the use of the car as an element of the offense. I mean, that's really the reality of it. California prosecutors sometimes charge this in the conjunctive, as they're told to do by certain cases. Most of the time, at least from my personal experience, they leave the statutory language the same, and that's reflected in the jury instructions the way that it was drafted at the time that Mr. Armanza-Arenas was convicted of this offense. So what you're doing is I think you're turning this on its head by saying, well, there's a disjunctive phrasing there. There's the or. And so therefore, let's look at the Shepard documents as if that gives us the answer. But I think the reality is that in the vast majority of cases, that's not going to tell you, because it's never proven. That's the reality. So you're using that to then say, well, the petitioner bears the burden. He's got to prove that it's joyriding instead of car theft, and then he loses, right? What am I missing here? And so to me, there's a real disconnect between that analysis with regard to 10-0851 and the reality of how these things are charged. And when you look back at the statute, it seems to me this is one crime. It's car theft with a minimum mens rea that's required in order to be convicted of that. Your Honor, I would take everything you said and just add to it that the point here is simply that just because in the vast majority of cases, this is not something that is charged in a divisible manner, doesn't mean it's not sometimes charged in a divisible manner, because it has to be. And that doesn't then change whether you can never look at the Shepard documents to determine in this crime what happened. Sure, but you search the Shepard documents to determine the question of divisibility. And so when you look at the Shepard documents in this particular case, you look at the practice of charging decisions in California, you look at the jury instructions, you look at the case law, whatever you look to as the appropriate inquiry, whether it's under Rendon to search the case law or whether you're looking at the typical Shepard documents, it all tells us that this is not an element of the offense. And so that gets back to de Kamp's teaching of trying to determine whether it's one crime and different means of committing one crime or whether it's alternative elements, right? But this becomes problematic, Your Honor, to administer, because now we're not looking at, is it a disjunctively phrased statute or what's happening in terms of jury unanimity, which is Rendon? Now the standard that seems to be proposed is what happens in the vast majority of cases? And that's even harder. The point of this modified categorical analysis to make this a simple determination. And so the point is, if the statute is phrased in the disjunctive, that's been the law since 2005. Mr. Almanza thought that was the law when he wrote his first brief. You look at which of the disjunctive phrases was charged. If they were both charged, the alien is going to win 99 percent of the time, because the burden is going to be on the government. So this is not some oppressive regime we're talking about. It's just that in this issue of the cancellation of removal, the burden happens to be on the alien. And so that's why the alien loses in this case. But in the vast majority of the cases, you're going to look at this disjunctive phrase. But how is the alien ever going to win if prosecutors never charge it separately as an element of the offense? Well, the point, Your Honor, is that Congress made a decision about who it wanted to get cancellation of removal. And it did not want to give one of these 4,000 slots to someone who could questionably be a morally turpitude and is criminal. It wanted the person to have, first of all, the burden to give all the documents. It's a confessional process in this application. You have to give all of the documents that are relevant to your case. If you don't do that, that's one way you can be denied, which was one of the ways, Mr. Almanza, was denied. But secondly, Your Honor, it wanted the person to show that there was no way they were morally turpitude and is criminal. That's in the statute. It's also in the legislative history. If I could go to that for one second. It's in the legislative history where Congress said, do not. It's a House Report 109-072 that an alien applying for relief or protection from removal bears the burden of satisfying the eligibility requirements for that relief or protection. And so they wanted to say, those 4,000 slots go to the creme de la creme. They don't go to people with these convictions unless they can show they don't, they're not disqualified in that situation. And can't he show that by saying, well, you know what? The prosecutor took me to trial and didn't have to prove that it was joyriding versus car theft. And so therefore, it was never proven that I was convicted of a crime of moral turpitude. That would have been the answer if Congress had said, if it was inequipoise, that the government bears the burden of showing you weren't convicted of a disqualifying offense, Your Honor. But that's not what happened here. Congress placed the burden on the person who was to be removed, who was seeking this extraordinary relief, one of 4,000 slots that can be given to 4 million people to show that they were not someone who criminally committed a morally turpitudinous act. That is an important burden, that it was a critical decision that Congress made to put that burden on in order to make sure that those slots were allocated appropriately. Now, getting back to Rendon for a second because I think, oh, yes. I'm wondering why it is important to me what Congress intended in the statute. Why that's important? Yeah. Well, because on every statute where I have to make this analysis, Congress has a statute or somebody imposes some criminal sentencing guidelines or somebody puts something together in order to say what the federal government would do. And then it's my job to try to see if some state conviction really meets that particular standard. Every one of what Congress did or the Sentencing Commission did has laudable concepts, laudable things that they were trying to do. But my honest approach is not that. It seems to me that Deschamps said, I compare elements regardless of all of that. If I can't make the elements compare, all of that makes no difference. But is this question applying to whether we use an elements versus means analysis or is it applying as to the burden of proof? As to what aspect of this case are you at? Are you trying to say it's different if it's a burden of proof? What I'm trying to say, Your Honor, is that the — there's two questions in this case, and there's the first question about what is a divisible statute. And I don't know if you were referring to that or if you were referring to who has the burden of proving that they weren't convicted under this. But is your argument only as to the burden? Well, what — Your argument about Congress's intent or why they did what they did, does it only have to do with the burden there? Yeah, I was answering Judge Wynn's specific question about why it's sort of unfair, I suppose, to, in a case that's in equipoise, rule against the alien in that situation. All right, I understand your argument. Yes, and I was saying that there, that's because that's what Congress wanted. But in addition, to the extent what Congress wanted was ambiguous, then the Board of Immigration Appeals in Almanza creates an opinion that says this is how you are to interpret it. It's a published opinion, and that opinion is entitled to deference in that situation, Your Honor. So in that, in that concept, I just wanted to just touch on one point in Rendon in terms of — Could I ask you one question — Yes, Your Honor. — before you move to that? Yes. If you applied — if Moncrief involved cancellation of removal, would the result be different? Your Honor, there's a couple of points to make, because — so the answer is, if Moncrief was not decided under the modified categorical approach, so we don't know what would have happened. And that's why it's not relevant to put it in Young. Let me explain. There was a first part of the case that did involve the modified categorical approach. They looked at the plea agreement to take the ten parts of the statute, and the plea agreement said it was possession with intent to distribute. They got that from the plea agreement, and they used the modified categorical approach. But then that sliver of a section, possession with intent to distribute, could not be further subdivided into for sale or for social distribution of marijuana. And so for sale was a removable offense, for social distribution was not, and because there wasn't a disjunctive on that small part, the court used only the categorical approach and said that that person, Moncrief, was not categorically an aggravated felon, to which we agree, if you are not categorically an aggravated felon, you win. You don't get, you are not ineligible for cancellation of removal. The problem in this case is we think the statute is divisible because it's phrased in the disjunctive, and so when it's a divisible statute, if the record of conviction is in equipoise, Congress said that the burden is on the alien and the alien loses in that case. So that's the difference. That's why Moncrief, we don't think, applies in this context. So if the 10-851, instead of being drafted the way it is, was drafted with like an A prong and a B prong. An A prong is joint writing and B prong is theft. And so there was no question that it was divisible. And we looked at the Shepard documents and here the prosecute, the jury instructions perhaps were erroneous, we say, because they shouldn't have charted, they should have said either A or B prong. So how would we analyze it if it were, if we had the same Shepard documents that we have here, but it was clear that it was a divisible statute and there were two prongs? I think we, Your Honor and myself are talking about the same case in essence because we're saying you analyze it the same. You're just making the argument easier that the statute is divisible. But whether it's harder to prove that the statute is divisible or easier, the analysis is still the same. We look at the Shepard documents. We see under which part of the divisible statute was the conviction. And if we cannot figure out under which part of the statute was the divisible conviction, in this one context alone, cancellation of removal, this extraordinary relief, when it's in equipoise, the burden of proof is on the alien and the alien loses in that case. But if we were trying to remove the alien on the basis of a criminal conviction, we would lose and we lose all the time, very graciously in front of the courts, on those cases 99% of the time. The problem is in this scenario that Congress placed a burden of proof on the non-citizen. Other questions? So opposing counsel also makes the argument that this isn't really about burden of proof. It's about burden of production and who should have the burden of producing a complete set of Shepard documents and that should be the government because they have better access. Why isn't that correct? Well, so the burden of production issue is a bit academic right now when we sit in this case because the burden of production issue mattered more earlier when the decision was made because back then the burden of proof was on the government and not on the, sorry, yeah, it was on the government and not on the alien. So the point was if the government lost, which is what used to be the law, if the government lost, then that meant you had to do something to encourage the non-citizen to provide the documents because if you didn't encourage it, they could hold back the documents, especially for foreign convictions, and you would never know if this foreign conviction in Norway was for a deportable offense or not. So when the burden of proof is on the alien, the issue of who has the burden of production is a little less important because they have now the burden, they have an incentive to provide every single document to show, look, my conviction was for joyriding, it was not for permanently taking the vehicle. So the burden of production matters. I'm not saying it's a moot part of the case, but it matters immensely if the court is going to now start thinking about moving to, which we would highly discourage, which I think Congress would discourage, moving the burden back to the government of proof, you still need this burden of production so as to not provide an incentive for someone to not give documents that are in their possession. That would be relevant to the determination, and I guess, let me just take you back to the question I asked before, why in this case would producing the plea colloquy in a West plea produce any relevant information to the analysis? Well, so there's, I think, two points. I think it wouldn't, and so that wouldn't change the result if you didn't like that the government doesn't have the burden of proof that the alien does, but that's a different question about whether the statute is divisible or not. I agree. Yes, okay, right. I've already said five times I agree. No, but I just want to make sure I'm protecting that with you, Judge. Okay. But let's, let me just, let me put this to you. Let's say that the Petitioner here had produced the plea colloquy and it just didn't show anything as we would expect. Yes. You didn't make any factual admissions. You just said I'm guilty as charged to count one. Yes, Your Honor. In that scenario, you would say that the Petitioner loses. Because of Young. Okay. And I think that's totally wrong, because it's not, as I said, it's not a factual determination at that point. It's just a straight legal determination. There's nothing to be in equipoise about. But I guess, and so if I, if I take that position, then his failure to produce the plea colloquy, you would agree, should have no bearing. Well, it matters, Your Honor, in this sense. Suppose you say it's a legal determination. That's not true all the time in this sense. That's easy to do in a, if it's a California conviction. If the person writes on their application, I don't know what I was convicted under, but in Norway, I stole a car and they threw me in jail. Now, we don't know what's going on. So the judge says, do you mind providing me the papers that they gave you in Norway? And you say, no, I'm not doing it. Totally different situation. Yeah, well, but here, that's kind of what happened. The judge asked for a transcript. That's what I'm trying to figure out. To me, this is no different if the judge had said, I don't know, go produce some totally irrelevant document. And the Petitioner is like, why would I need to do that, Your Honor? It's not going to have any bearing on this. And the judge said, because I told you to. And if the Petitioner refused to, you would say, somehow the immigration judge could say, therefore, you lose? Well, in this context, Your Honor, where you're saying the document has no legal bearing whatsoever, there I would disagree in the sense that there are three cases on this Court, which I've read earlier in the oral argument, in this Court's precedents, that talk about that in a West plea, you could still admit facts in a plea agreement that are relevant for the modified categorical analysis. Because what's happening is What is a, I thought a West plea was by just by definition, the defendant was not making any factual admission. You're, you are, you, what it would be doing is it would simply, what the purpose of the plea transcript would be doing is it would be playing the same role as if they had written all of this in a formal indictment. And yes, it's true that the defendant isn't necessarily saying, yeah, I did every one of these facts, but they're still pleading guilty to the offense. And the offense can only be determined if those facts are true in the sense that if, if this had been a permanent taking, which we'd have known because there was some sort of joint ownership here in this agreement, we would have seen that. And the only way that a guilty plea would have been proper would have been a permanent taking in this case. So it will still have had a relevance if this had been the kind of theft that would have occurred here, Your Honor. And so that's why, it helps us to figure out what the conviction is, because otherwise we wouldn't know. I have 30, oh, I've gone over. So. Yes, your time has expired. Any further questions from the panel? Thank you for your argument. Thank you, Your Honor. If I may, Your Honor. Three points in rebuttal. First of all, Judge Watford, I'd like to take one shot at trying to convince you on divisibility, if I may. And I think it's worth remembering, DECAMP is a sentencing case. And the way this Court understands the DECAMP opinion will have effects not just for immigration, but also for sentencing. And so it's important to be mindful of the Sixth Amendment concern referenced in DECAMP, that a sentence cannot be enhanced over statutory maximum except based on facts that have to be found by a jury beyond a reasonable doubt. That's the only way we know, in the words of DECAMP, that there was a conviction in the deliberate and considered way the Constitution requires. That means for divisibility, it's not enough to just look for the word or. It's not enough to just look for phrasing that can be disjunctive, because then you might have a disjunctive way of committing a crime that would not be found by a jury beyond a reasonable doubt. And that would. Roberts, sorry. No, I beg your pardon. Please. Not in the hypothetical I gave to you earlier, though, where the charging document only charges the permanent, the intent to permanently deprive. And the jury was instructed only on that intent. The fact, if I may, that the jury may have been instructed on extraneous facts that do not have legal relevance to the ultimate conviction. But that's not true. That's the mens rea is most definitely an element of the offense that must be proved in every single case. But if the charging document in the particular case only charges a single mens rea, and the jury is only instructed on that mens rea, then we do know, if they come back with a conviction, that they found that element to be satisfying. But Dekamp is clear that that is not a step in the analysis that can be taken if the statute itself does not make the different, the two different intents an element. That's all I mean to make. And if this Court were to rule otherwise, that would run into exactly the constitutional concerns that Dekamp was at pains to try to avoid by focusing on elements. But the second — Isn't the element the intent to take? Isn't that what Judge Watford is asking about? That's the mens rea. The intent to take for a temporary — for any period of time, which is not turpitude. Your argument is it's an element, but the jury doesn't have to find temporary or permanent. It does, however, have to find that he had the intent to take. It has to find the intent to take for any period of time. But that is not turpitudinous. It needs to be to take permanently before you get to turpitude. Well, but the problem is that we can't — we can't determine what he intended to do without looking at something. And it's compounded by the West plea, because he doesn't admit to anything. So do you agree that our precedent says even with a West plea, we can look at the Shepherd documents in order to establish the effect of the conviction? We've bled into the burden of proof issue. The first issue is divisibility, whether you even look to try to find out whether the particular offense in a divisible statute that he was convicted of. But in terms of determining divisibility — I understand your position, and I'm hung up on this burden of proof issue only because, as counsel for the government points out, this is an extraordinary remedy on which the alien has to convince the attorney general that he merits the relief. Yes, that's absolutely right, Your Honor. And there are many points that he will have to continue to show on remand for — in order for the agency to exercise its discretion in his favor. He has the burden of showing 10 years' continuous presence. He has the burden of showing an exceptional and extremely unusual hardship to U.S. citizen relatives. But under your — He has to show even beyond that. Under your theory of the case, had he suffered a string of 15 convictions for 10-851 because he let his life as a chop shop operator, the attorney general could never exercise her discretion in denying him relief? On the contrary, Your Honor. That's not our position at all. The agency most certainly can and does consider that a criminal history in the exercise of discretion. The point is they have not — the board has not exercised discretion in this case. It found him ineligible on a legally erroneous basis. All we are asking for is not that this Court direct entry of relief, but remand to the board so that the board can determine whether he can meet his burden on the other factors, both for eligibility and for an exercise of discretion. My hypothetical, the board could never, under your theory, could never grant relief if the convictions were all 10-851 because it could never be a crime involving moral turpitude, no matter how egregious. For disqualification — for the disqualification purpose, that may be right. No, no. I'm saying — But for the ultimate exercise of discretion, I don't know of any doctrine that says the board can't consider that. What can they look at, then? Maybe I'm misunderstanding your argument. As I understand your argument, the board has to adjudicate this application as if no such conviction ever occurred. The board, when exercising its discretion, I believe, can look at conduct. The disqualification ground, the statute that says that you're not eligible even to apply, even to have a hearing and put in your evidence as to why you are a meritorious case, the creme de la creme, as my brother puts it, is what's focused on the Taylor Shepard issue as to whether you are convicted of a crime involving moral turpitude. Once you get over that, you submit your application. The immigration judge has a full hearing, and the witnesses will come in. My client would testify, and at that point, he needs to convince him having the burden not only of continuous physical presence and extreme hardship, but also that he merits the exercise of discretion in his favor. And all of these things can and are considered by the board. So he could ask your client, what did you do? And the client would have to answer it in order to convince the attorney general to exercise her discretion in his favor. I think certainly that is an authority that the rules do give to immigration judges, is to ask questions of a witness who is testifying. They certainly could ask a question like that. But not at the disqualification phase, which is where we are now. We would respectfully submit that the petition for review should be granted. I thank the court for its attention. Thank you, counsel. Thank you both for your arguments. The case will be submitted for decision and will be in recess.
judges: Thomas, Gould, Tallman, Rawlinson, Bybee, Callahan, Ikuta, Smith, Nguyen, Watford, Owens